UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JASON G. STRICKLAND,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-00399

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 8), Plaintiff's reply (doc. 9), the administrative record (doc. 6), and the record as a whole.[3]

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

## A.  Procedural History

Plaintiff filed an application for SSI and DIB asserting disability as of July 27, 2011 on account of a number of impairments including, *inter alia*, cervical and lumbosacral degenerative disc disease, a history of seizures, and bipolar/depressive and anxiety disorders.  PageID 64, 282-95.

After an initial denial of his application, Plaintiff received a hearing before ALJ Gregory Kenyon on March 28, 2014.  PageID 84.  The ALJ issued a written decision on May 27, 2014 finding Plaintiff not disabled.  PageID 61-77.  Specifically, ALJ Status found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since July 27, 2011, the alleged onset date (20 CFR 404.1571, *et seq*, and 416.971, *et seq*).

3. The claimant has the following severe impairments: cervical and lumbosacral degenerative disc disease, a history of seizures, and bipolar/depressive and anxiety disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to

2

      perform light work[4] as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following additional limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no concentrated exposure to temperature extremes or respiratory irritants; (5) occasional overhead reaching; (6) limited to performing unskilled, simple, repetitive tasks involving only simple decisions; (7) occasional contact with co-workers, supervisors, and the public; (8) no more than occasional over the shoulder supervisions; (9) no fast paced production work or strict production quotas; (10) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next; (11) no driving of automotive equipment.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in] 1970 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social

---

[4] The Social Security Administration ("SSA") classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

>Security Act, from July 27, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 62-76.

Thereafter, the Appeals Council denied review on September 29, 2015, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 42. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 64-69. Plaintiff, in his Statement of Errors, also summarizes the evidence of record. Doc. 7 at PageID 567-72. The Commissioner, in response to Plaintiff's Statement of Errors, defers to the ALJ's recitation of the evidence, and presents no objection to Plaintiff's summary. Doc. 8 at PageID 585. Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When

substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P,

> Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

**III.**

In his Statement of Errors, Plaintiff argues that the ALJ failed to: (1) give appropriate weight to his treating psychiatrist, Mahmood Rahman, M.D.; and (2) find him credible. Doc. 7 at PageID 574-79. Finding Plaintiff's first alleged error to be well taken, the undersigned does not address the merits of Plaintiff's credibility argument.[5]

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*.

Treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring

---

[5] The undersigned notes the ALJ's credibility finding was based in part on Plaintiff's conservative treatment and lack of hospitalization. PageID 72. While "the frequency or extent of the treatment sought by an individual" is a factor upon which the ALJ may rely in assessing credibility, the ALJ must also consider "possible reasons" as to why the claimant did not "comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016). It must be noted here that Plaintiff suffers from severe mental impairments and that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation[.]" *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). In fact, in such situations, the failure to seek treatment "should not be a determinative factor in a credibility assessment." *Id*. Accordingly, on remand, the ALJ should address the issue of credibility anew.

6

a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[6]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

---

[6] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 416.927. *Id*.

7

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

The record contains treatment notes from Dr. Rahman dated from September 2011 through February 2014. PageID 395, 404, 410, 418-19, 432, 542-60. In February 2014, Dr. Rahman issued an extensive narrative report and completed a Mental Impairment Questionnaire (PageID 561-65), in which he noted that Plaintiff "[v]ery often looks apprehensive and depressed"; "[h]as paucity of speech [and] constricted affect and psychomotor retardation"; and "at times shows considerable irritability and severe mood swings." PageID 561. Dr. Rahman then concluded that Plaintiff was "unable to withstand any kind of stress" and "[d]ecompensates fairly rapidly." *Id*. at 564-65. Dr. Rahman also found that Plaintiff was "markedly"[7] limited in social functioning -- and in maintaining concentration, persistence, or pace -- and had experienced "marked episodes of deterioration or decompensation in work." *Id.* Dr. Rahman further found that Plaintiff would be absent from work more than three times a month as a result of his mental impairments. *Id*.

The ALJ held that Dr. Rahman's opinion was entitled to "no more than minimal weight." PageID 74-75. In so concluding, the ALJ found that Dr. Rahman's opinion was: (1) contradictory to Plaintiff's prior Global Assessment of Functioning ("GAF") scores of 60-65; (2) inconsistent with Plaintiff's day-to-day activities; (3) inconsistent with the opinion of examining psychologist, George Schultz, Ph.D.; and (4) based solely on Plaintiff's subjective complaints. PageID 74-75.

---

[7] "Moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq*. *See Holland v. Comm'r of Soc. Sec.*, No. 3:14-CV-246, 2015 WL 6891032, at *4 (S.D. Ohio July 6, 2015).

The Court agrees with Plaintiff that the ALJ erred in assessing the weight to be reasonably accorded to Dr. Rahman's opinion. Initially, the Court notes that the ALJ failed to mention the concept of controlling weight when analyzing Dr. Rahman's opinion, or to set forth the required analysis. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Thus, the Court cannot determine whether the ALJ undertook the "two-step inquiry" required when analyzing treating source opinions. *See Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-78 (6th Cir. 2013). The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id.* at 377 (citations omitted). On this basis alone, reversal and remand is mandated. *See Aytch v. Comm'r of Soc. Sec.,* No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug 19, 2014).

Further, insofar as the ALJ found Dr. Rahman's opinion "inconsistent with the objective findings of Dr. Schultz," the undersigned notes that any such conflict cannot amount to substantial evidence upon which to deny Dr. Rahman's opinion controlling weight. *See Gayheart,* 710 F. 3d at 377 (holding that "conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexaming doctors" because "[o]therwise the treating-physician rule would have no practical force").

Even assuming, *arguendo*, that the ALJ adequately conducted and explained the controlling weight test -- which the undersigned concludes he did not -- the ALJ nevertheless failed to provide good reasons for discounting the weight accorded to Dr. Rahman's opinion.

First, the ALJ found that Dr. Rahman's opinion deserved no more than minimal weight because it contradicted his own treatment notes. PageID 74. In reaching this conclusion, the ALJ ignored Dr. Rahman's abnormal mental status exam findings from 2011 to 2014 -- including emotional lability (*i.e.,* excessive emotion), "considerable" agitation, depression and

9

anxiety -- as well as Plaintiff's consistent self-reports of depression, low energy, low motivation, low self-esteem, high stress, insomnia, fatigue, helplessness, and worthlessness. PageID 561-63. An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his [or her] position." *Daniel v. Comm'r of Soc. Sec.*, No. 3:14-cv-51, 2015 WL 4550406, at *4 (S.D. Ohio Mar. 6, 2015).

Second, Dr. Rahman repeatedly found, upon examination, that Plaintiff appeared "anxious," "guarded," "distracted," "apprehensive and depressed," and that he displayed paucity of speech, a constricted affect, and psychomotor retardation. PageID 419, 456-58, 561, 563. These findings, contrary to the ALJ's conclusion, were based on Dr. Rahman's personal observations during his treatment of Plaintiff from 2011 to 2014, not Plaintiff's subjective complaints. *See* PageID 404, 419, 456-58, 542-54, 560.

Third, the ALJ found that Dr. Rahman's opinion need not be deferred to because Dr. Rahman's findings were inconsistent with Plaintiff's daily activities. The undersigned finds that, absent meaningful explanation by the ALJ, it is unclear how Plaintiff's minimal day-to-day activities -- such as running the water for dishes because he cannot stand to wash them -- wholly undermine Dr. Rahman's opinion. PageID 65; *see Meece v. Barnhart,* 193 F. App'x 456, 465 (6th Cir. 2006) (finding "the fact that Plaintiff engages in minor life activities not inconsistent with disabling" limitations). This is especially so in this case, where the ALJ himself described Plaintiff's daily activities as "fairly limited." PageID 72. Accordingly, the ALJ's perfunctory statement -- concerning Plaintiff's limited daily activities -- fails to provide a good reason for discounting the weight to be reasonably accorded to Dr. Rahman's opinion.

Finally, the ALJ also rejected Dr. Rahman's opinion on the basis of conflicting Global Assessment of Functioning ("GAF")[8] scores noted in his records. PageID 75. However, a "GAF score, alone, cannot discredit [a treating's physician's] assessment of Plaintiff's limitations[.]" *Smith v. Astrue,* 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008) (finding it improper for an "ALJ [to] use unqualified data, provided by [a] professional as a macroscopic evaluation, to disprove the professional's more detailed, expert functional assessment"). Moreover, "[t]he most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin,* No. 3:13-cv-0257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice").

Accordingly, the undersigned finds the ALJ's reasoning unsupported by substantial evidence and meriting reversal.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits.

---

[8] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). As set forth in the DSM-IV, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id.* A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.* A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . . but generally functioning pretty well." *Id.* A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *Id.*

Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, evidence of disability is not overwhelming, and therefore, a remand for further proceedings is proper so that the ALJ can properly assess all opinion evidence of record anew in light of the foregoing findings.

V.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date:   February 7, 2017                          s/ Michael J. Newman
                                                  Michael J. Newman
                                                  United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).